UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GRANITE COMMUNICATION, INC.,
on behalf of itself and all others similarly
situated,
    Plaintiff,

-vs-                                          Civil No. 3:07cv01354 (PCD)

ONE COMMUNICATIONS CORP.,
    Defendant.

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Granite Communications, Inc. brings this action pursuant to Connecticut's Unfair Trade Practices Act, Conn. Gen Stat. §42-110a *et seq* ("CUTPA"), along with claims of Unjust Enrichment and a breach of the Implied Covenant of Good Faith and Fair Dealing. [Doc. No. 1]. On April 7, 2008, Defendant One Communications Corp. filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [Doc. No. 29]. For the reasons stated herein, this motion is **granted.**

I.    **BACKGROUND**

Plaintiff brings a class action on behalf of itself and all other similarly situated entities and persons residing or located in the State of Connecticut. Plaintiff, Granite Communications ("Granite"), is a resident of the State of Connecticut. Defendant, One Communications Corp. ("OCC"), is a Delaware Corporation.

Plaintiff is a telecommunications company in Connecticut. It sells and installs telecommunications systems - i.e. telephone equipment and related accessories - to other

1

businesses. (Def.'s Mot. at 3; Compl. ¶ 11.) Defendant is a local and long distance telecommunications company that provides dial-tone as well as internet service. (Def.'s Mot. at 3.) Plaintiff asserts that before the incidents leading to this complaint it had a successful "working relationship" with Defendant and its predecessor companies. (Compl. ¶ 9.) In late 2006, Granite was hired by a new customer, West Haven Lumber ("West Haven"). Plaintiff was to sell and install equipment for an integrated digital telephone system at West Haven's place of business. Plaintiff alleges that it approached Defendant to provide the dial-tone service for West Haven's new telephone system. (Compl. ¶ 12.) Defendant agrees that it sold dial-tone telephone service to West Haven Lumber. (Def.'s Mot. at 4.) Plaintiff itself, however, did not purchase any services from Defendant.

Granite installed the new system it had sold to West Haven on November 13, 2006, at West Haven's place of business. (Compl. ¶ 14.) Plaintiff alleges that West Haven immediately had problems with dropped calls and improper routing. (Id.) On behalf of West Haven, Granite informed OCC of these problems. OCC responded that the cause resided with Granite's hardware, not the dial-tone service it provided. (Id. ¶ 15.) Granite then "trouble-shooted" all the equipment it had installed and obtained the assistance of Iwatsu (brand of telephone equipment) engineers to check for problems in the hardware it had sold to West Haven. (Id. ¶ 15-16.) Plaintiff claims that its technicians found that West Haven's problems were caused by OCC's provision of service. Granite therefore notified OCC's technical support of West Haven's continuing issues. Plaintiff alleges that Defendant still responded that the problem was caused by Granite's hardware. (Id. ¶ 15-18.) For several weeks, Granite continued to work on West Haven's system, replacing some hardware, reprogramming the system and devoting its lead technician to working on-site at West Haven. (Id. ¶ 20-23.)

2

Plaintiff asserts that it made "repeated efforts" on behalf of itself and West Haven. However, Plaintiff also admits that it was "essentially acting as a broker for the provision of telecommunications services between OCC and West Haven." (Pl.'s Mem. at 3.) Therefore, any efforts made by Granite to contact or work with OCC were on behalf and for the benefit of Plaintiff's customer, not itself. Plaintiff alleges that it had to wait on hold for forty-five minutes each time it contacted Defendant on behalf of West Haven and that the problems with West Haven's system were not resolved until February 7, 2007, when Defendant finally tested its own equipment and replaced its circuit. (Id. ¶ 26.) Plaintiff complains that even after this date, it has had to work with its customer to develop solutions "in the face of OCC's continued failure and refusal to address the legitimate needs of the customer." (Id. ¶ 27.) Plaintiff, however, has not explained why it provided this "broker" service to West Haven if it was not "billable work." It is also unclear why Granite continued to work on behalf of West Haven once Granite determined that its customer's problem was not due to the hardware it had installed.

Plaintiff alleges that it suffered the direct loss of hundreds of hours of billable work that could have been performed for other customers and that its relationship with West Haven was strained as a result of Defendant's wrongful conduct. (Id. ¶ 23-39.) It further alleges that Defendant's customer service practices are devised to discourage parties from raising legitimate grievances. (Id. ¶ 31).

## II. STANDARD OF REVIEW

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. See Fed. R. Civ. P. 12(b)(1). Plaintiff, as the party asserting subject matter jurisdiction, has the burden of

establishing by a preponderance of the evidence that it exists, Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996), and the court should not draw argumentative inferences in its favor. Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l, 968 F.2d 196, 198 (2d Cir. 1992); see also Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (The court will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations" but "will not draw argumentative inferences in the plaintiff's favor.").

Unlike with a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)); see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (in resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing"). A court must "look to the substance of the allegations to determine jurisdiction." Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993).

A motion to dismiss for lack of standing is made pursuant to Rule 12(b)(1). Alliance for Environmental Renewal, Inc., 436 F.3d 82, 88 (2d Cir. 2006). In deciding a motion to dismiss, "standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." Spencer v. Kemma, 523 U.S. 1, 11 (1998).

Where, as here, a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other bases, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections

become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n., 896 F.2d 674, 678 (2d Cir. 1990).

In deciding Defendant's motion to dismiss, the Court accepts as true the material facts alleged in the Complaint and draws all reasonable inferences in Plaintiff's favor. See Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995) citing Hill v. City of New York, 45 F.3d 653, 657 (2d Cir. 1995).

## III. DISCUSSION

### A. Standing

Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005). Defendant argues that Plaintiff lacks standing under federal and state law, claiming that Plaintiff did not suffer a "direct injury."

In Gamin v. Smith & Wesson Corp., 258 Conn. 313 (Conn. 2001) (holding that the Mayor and City of Bridgeport do not have standing to sue handgun manufacturers for harm to the city), the Supreme Court of Connecticut adopted the federal test for standing from Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229 (2d Cir. 1999). Therefore, standing under Article III and applicable state law can be considered together.

The parties dispute whether Plaintiff has alleged a direct injury, usually necessary for standing. "Where a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery." Id. at 236-37. Plaintiff asserts that Defendant's wrongful

5

conduct was directed at Plaintiff and that Plaintiff sustained damages caused directly by this conduct. Plaintiff argues that its injuries are direct as Defendant failed to respond to its requests when Plaintiff interacted with Defendant. (Pl.'s Mem. at 2.) However, Defendant correctly counters that because its contract was only with West Haven, any injury to Plaintiff was indirect. Plaintiff admits that it was "essentially acting as a broker for the provision of telecommunications services between OCC and West Haven." (Id. at 3.) Even though it may have interacted with Defendant, Plaintiff did so on behalf of West Haven and therefore any wrongful failure to provide customer service or a working product could not have been directed at Plaintiff.

As a "broker," any injuries sustained by Plaintiff were necessarily derivative of injuries to its customer, West Haven. Without injury to the customer, Plaintiff would not have incurred increased costs for time spent aiding the customer and "trouble-shooting" the problem. Therefore, "being purely contingent on harm to third parties, these injuries are indirect." Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 239 (2d Cir. 1999). Plaintiff argues that Defendant's failure to provide timely and responsible technical assistance directly injured Plaintiff. (Pl.'s Mem. at 7.) However, West Haven experienced problems with the service they had contracted to buy from OCC. Although Granite then interacted with Defendant concerning these problems, the injury was originally to West Haven. As Defendant contends, West Haven Lumber was the party purchasing services from and in contract with Defendant. Defendant's alleged failure to provide reasonable assistance only injured Granite because it absorbed some of the increased costs to its customer. Plaintiff's injuries are therefore derivative.

6

Plaintiff relies on United Steel, Inc. v. Spiegel, Zamecnik & Shah, Inc., 2007 WL 1532726 (Conn. Super. 2007) (holding that even without privity of contract, plaintiff contractor had standing to sue defendant architect based on architect's negligence.) However, in United Steel, 2007 WL 1532726 at *2, the defendant's conduct *directly* harmed the plaintiff. Furthermore, the architect's contract with the University of Connecticut was based on an understanding that the plaintiff contractors were to rely on the architect's plans. In contrast, even if Granite helped broker the contract between West Haven and OCC, there was no actual understanding that Granite was also to rely on OCC's provision of services. Once Granite had successfully installed the new system it sold to West Haven, West Haven could have worked with and contacted OCC directly. Under the circumstances, there was no reason for OCC to assume that Granite would rely on their provision of services to a mutual customer. The relationship between Plaintiff and Defendant is not analogous to a contractor that must follow an architect's design.

Furthermore, even if Plaintiff's injury is qualitatively different from any injury suffered by West Haven, Plaintiff's injury is still indirect because it derives from an injury to its customer. See Pagan v. Calderon, 448 F.3d 16, 30 (1st Cir. 2006) citing Bellows v. Amoco Oil Co., 118 F.3d 268, 276-77 (10th Cir. 2002) ("It is not enough for the agent to allege an injury that is qualitatively different from that suffered by the principal; rather, the agent must allege an injury that does not derive from the injury to the principal.") Although Plaintiff might have different damages than its customer, the source of the injury is the quality of Defendant's performance on its contract with West Haven. Any damages suffered by Plaintiff are the costs of West Haven's injury that came to be absorbed by Plaintiff. Therefore, Plaintiff's injury is derivative even if its damages are unique.

However, the inquiry does not end there. Both the Connecticut and Second Circuit courts employ a three part policy analysis to decide if plaintiffs with indirect injuries lack standing to sue, as the "United States Supreme Court noted the impossibility of articulating a black-letter rule capable of dictating a result in every case." Connecticut State Medical Soc. v. Oxford Health Plans (CT), Inc., 272 Conn. 469, 478 (Conn. 2005). "First, the more indirect an injury is, the more difficult it becomes to determine the amount of the plaintiff's damages attributable to the wrongdoing as opposed to other, independent factors. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries. Third, struggling with the first two problems is unnecessary when there are directly injured parties who can remedy the harm without these attendant problems." Gamin v. Smith & Wesson Corp., 258 Conn. 313, 353 (Conn. 2001) quoting Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229 (2d Cir. 1999).

In assessing the first factor, it is important to note that although there is not a lengthy factual chain leading to Plaintiff's damages, Plaintiff itself is one of the intervening factors in its injury. Although the chain is shorter than in Gamin or Vacco v. Microsoft Corp., 260 Conn. 59 (Conn. 2002), there are actors besides Defendant to whom the injury must be partially attributed. Here, the independent factor is Plaintiff's intervention on behalf on West Haven. Plaintiff claims that it was "Defendant's response to the defective telephone circuitry and switches that caused Plaintiff's injuries." (Pl.'s Mem. at 12.) However, Plaintiff's characterization misses a link the factual chain. It was Plaintiff's business decision - either voluntary for good will or because of the contract it negotiated with West Haven - to become West Haven's broker with Defendant, combined with Defendant's response, that caused Plaintiff's injuries.

8

The second factor addresses the court's concerns about multiple recoveries from different Plaintiffs along the factual chain. In Vacco, 260 Conn. at 59, an indirect purchaser of Microsoft's software was denied standing to pursue a claim of monopoly and price fixing. Here, Plaintiff is not even an indirect purchaser, it is not a purchaser of Defendant's services at all. As in Vacco, Plaintiff has no contract with Defendant and did not purchase goods or services directly from Defendant. Unlike in Vacco, the Plaintiff here did interact with the Defendant. However, as discussed above, Plaintiff suffered indirect injuries when some portion of West Haven's costs were shifted to Plaintiff. All damages were originally to West Haven and therefore recovery by Plaintiff would involve either the apportionment of damages or the risk of multiple recoveries.

The third factor weighs in favor of the Defendants, as West Haven, the directly injured party, could bring suit. In Connecticut State Medical Soc., the court found that plaintiff medical association lacked standing to bring a claim against defendant health insurer, as the association's members could bring the claim. In addition, the members had arbitration agreements with the Defendant. Therefore, allowing the suit would have "countenanced an end run around those arbitration provisions." Connecticut State Medical Soc. v. Oxford Health Plans (CT), Inc., 272 Conn. 469, 479-80 (Conn. 2005). Here, the contract between West Haven and OCC has a provision disclaiming warranties and liabilities. Allowing this suit would "countenance an end run around" those provisions and decisions concerning their validity.

Furthermore, This case is analogous to Sotirio v. Washington Mutual Bank, 2002 WL 31957490 (Conn. Super. 2002). In Sotirio, Washington Mutual erroneously failed to release a mortgage. Counsel for the mortgagor, the subsequent purchaser of the property and his counsel sought compensation for the time they expended to remedy Washington Mutual's error.

9

However, the court held that only the mortgagor had standing. Counsel did not have standing to sue for time spent working on behalf of a client, even when that time was necessary because of the wrongdoing of a third party. Just as in this case, counsels' injuries were only derivative of their clients'. The apportionment of costs between client and counsel or customer and "broker" should be negotiated between those parties.

In sum, the three part test weighs against granting Plaintiff standing to bring this claim for their indirect injury. Although Plaintiff may have incurred expenses, the injury was West Haven's. As the Second Circuit noted, there must be "judicial tools" to "limit a person's responsibility for the consequences of that person's own acts.... For this reason, a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts is generally said to stand at too remote a distance to recover." Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 (2d. Cir. 1999); citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992).

### B. Good Faith and Fair Dealing

Plaintiff bases its claim of a violation of the Covenant of Good Faith and Fair Dealing on the theory that it was an intended beneficiary of the contract between OCC and West Haven. The contract is governed by Massachusetts law. (Def.'s Mot. Ex. A. p.2.) Under both Massachusetts and Connecticut law, in order to prevail as a third party beneficiary the plaintiff must show that the contracting parties "intended to give [the plaintiff] the benefit of the promised performance." Anderson v. Fox Hill Village Homeowners Corp., 424 Mass 365, 366-67 (Mass. 1997); Gazo v. City of Stamford, 255 Conn. 245, 261 (Conn. 2001). Intent is determined by looking to the language and circumstances of the contract. Id.

10

Plaintiff bases this claim on a line in the OCC/West Haven Service Agreement: "equipment provided...and placed at Customer's site in connection with the Services." (Pl.'s Mem. at 19; Def's. Mot. Ex. A.) Plaintiff argues that this line shows an intent that Granite install OCC's equipment at West Haven's place of business. However, this line gives no indication of an intent to make Granite a third party beneficiary of the contract. The contract does not refer to Granite or any need for a third party to complete installation. Granite was not hired pursuant to the OCC/West Haven contract to install Defendant's equipment. West Haven contracted with Granite for the sale and installation of Granite's own equipment. Even if Granite also installed some hardware provided by Defendant, this alone does not illustrate an intent by the contracting parties to make Plaintiff a beneficiary. There is simply no evidence showing that West Haven and OCC intended other parties to be involved in or benefit from OCC's provision of service to West Haven.

Under Massachusetts law, "the intent must be clear and definite." Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 367 (Mass. 1997). However, not only is there no clear and definite statement here, but there is no indication at all that Plaintiff was an intended beneficiary of the contract. Therefore, it is not necessary to address Plaintiff's contention that it need not show a "clear and definite" intent.

### C. CUTPA and Unjust Enrichment

Privity of contract is not required to bring a claim under the Connecticut Unfair Trade Practices Act. Conn. Gen. Stat. § 42-110g provides: "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action." In 1979, the Connecticut

11

Legislature amended CUTPA, deleting all references to "purchasers, sellers, lessors, or lessees." Vacco v. Microsoft Corp., 260 Conn. 59, 88 (Conn. 2002). However, "not withstanding the broad language and remedial purpose of CUTPA, we have applied traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA." Id. "We therefore reject the plaintiff's claim that the elimination of CUTPA's privity requirement from § 42-110g(a) a fortiori compels us to conclude that the plaintiff, as an indirect purchaser, has standing to pursue his CUTPA claims arising out of the defendant's allegedly anti-competitive conduct." Id. at 87. In Vacco, the court then used the three factor test from Gamin to decide standing under CUTPA. The Court has already shown above that under the three factor Gamin test, Plaintiff does not have standing. Therefore, Plaintiff is not the proper party to assert this CUTPA claim.

Furthermore, although privity of contract is not necessary to state a claim for unjust enrichment, Coastal, Inc. Plumbing-Heating v. TP Builders, Inc., 2005 WL 1089920 (Conn. Super. 2005), Plaintiff must still meet general standing requirements to bring this claim. As discussed above, Plaintiff does not have standing to bring its indirect claims against Defendant. As just discussed in relation to CUTPA, even for a claim that does not require privity of contract, Plaintiff does not have standing as its claims are too indirect.

Finally, Plaintiff's assertion that it was "effectively in the same position as a subcontractor" (Pl.'s Mem. at 21) and therefore has standing to assert a claim of unjust enrichment is incorrect. Plaintiff and Defendant had a mutual customer to which they provided related, but distinct, services. Plaintiff was not hired by Defendant or by West Haven to complete a portion of Defendant's job.

## IV. CONCLUSION

Defendant's Motion to dismiss is granted. Plaintiff's request for limited discovery on the directness of its injury is denied. Plaintiff should not need discovery to prove a direct injury and this matter has been resolved as a matter of law.

For the foregoing reasons, Defendant One Communication Corp.'s Motion to Dismiss [Doc. No. 29] is **granted.**

SO ORDERED.

Dated at New Haven, Connecticut, this  31st  day of October, 2008.

                                                              /s/
                                          Peter C. Dorsey, U.S. District Judge
                                          United States District Court